## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. PATTERSON.

[No. 5,452. Filed October 31, 1905. Rehearing denied February 16, 1906. Transfer denied April 27, 1906.]

1. MASTER AND SERVANT.—*Works, Ways and Machinery.*—*Repairs.*—It is the master's duty to use reasonable care to provide servants safe tools and appliances with which to work. p. 621.

2. PLEADING. — *Complaint. — Railroads.—Defective Engines.*—A complaint by the servant showing that defendant railroad company ordered him, over his protest, to run an engine the windows of which had been boarded up, thus compelling him, in order to receive signals and see his train, to hold his head near the water-gauge, which was defective and liable to burst, of which defect defendant had knowledge and plaintiff had not, states a cause of action.  p. 621.

3. MASTER AND SERVANT.—*Works, Ways and Machinery.—Defects Causing Exposure of Servant to Other Dangers.*—A railroad company furnishing its engineer an engine with windows boarded up so that such engineer was compelled to hold his head near a dangerous water-gauge in order to see the train and the signals is liable for injuries caused by such gauge, such defective boarding being a proximate cause of the injury, the fact that other causes contributed thereto being no defense.  p. 621.

4. NEW TRIAL. — *Railroads. — Negligence. — Evidence.—Conjectures.*—A new trial can not be granted because of insufficient evidence, where the plaintiff engineer was injured by an explosion of a water-gauge, near which he was holding his head to see his train and brakemen's signals because the windows of his cab had been boarded, the defendant's contention that he might have been hurt though such windows were in good condition being purely conjectural.  p. 622.

5. RAILROADS.—*Engineers.—Whether Duty to Receive Signals from Firemen Exclusive.*—It is the duty of a railroad engineer to keep a vigilant outlook, and he is not compelled to rely exclusively upon signals from his fireman in the operation of his engine.  p. 622.

6. NEGLIGENCE.—*Proximate Cause.—Question for Jury.*—Whether an injury was proximately caused by the alleged negligence is primarily a question of fact for the jury.  p. 623.

7. SAME.—*Proximate Cause.—Intervening Agent.—When a Defense.*—Defendant can escape liability for his negligence on the ground of an intervening agent only when he could not reasonably anticipate the presence of such agent. *New York, etc., R. Co.* v. *Perriguey,* 138 Ind. 414, and *McGahan* v. *Indianapolis Nat. Gas Co.,* 140 Ind. 335, distinguished.  p. 623.

8. TRIAL. — *Negligence. — General Verdict. — Effect.*—A general verdict for plaintiff in a negligence case is a finding that the negligence complained of was the proximate cause of the injuries.  p. 624.

9. MASTER AND SERVANT.—*Assumption of Risk.—Basis of.—Contracts.*—The doctrine of assumed risk in relation to known de-

fects depends upon an implied contract deduced from the facts, but where there is an express one, such implied contract is necessarily excluded. p. 624.

10. MASTER AND SERVANT.—*Assumption of Risk.*—Where an engineer is assured by the railroad company that his engine, against the running of which he has protested, is all right and that the company is responsible for what happens, such engineer does not assume the risks of the defects against which he has protested, and the company becomes responsible therefor. p. 624.

11. CONTRACTS. — *Master and Servant.* — *Negligence.* — *Works, Ways and Machinery.*—Contracts by which the master becomes responsible for injuries to servants caused by defects in the works, ways and machinery are valid. p. 625.

12. MASTER AND SERVANT.—*Works, Ways and Machinery.*—*Negligence.*—*Contributory.*—The servant who works with tools known to be defective can not, as a matter of law, be held guilty of contributory negligence. p. 626.

From Decatur Circuit Court; *Francis T. Hord,* Judge.

Action by Samuel N. Patterson against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $6,000, defendant appeals. *Affirmed.*

*L. J. Hackney, John T. Dye* and *Frank L. Littleton,* for appellant.

*George W. Bruce,* for appellee.

ROBY, J.—Appellee had judgment in an action for personal injuries. The cause was tried upon a single paragraph of complaint.

Errors assigned are that the court erred in overruling appellant's demurrer to the complaint and in overruling its motion for a new trial.

It is averred in the complaint that appellant was operating a railroad, and appellee was in its employ on February 3, 1903, in the capacity of an extra engineer, and on said day it ordered him to take its engine No. 723, and pull a freight-train from Cincinnati to Indianapolis; that said engine had been negligently permitted to become and be out of repair and unfit for use, and that the glass had been

broken, or taken out of the cab windows, and said windows covered and closed with boards, so that they could not be used; that as originally constructed said cab had glass windows on the side and front for the use of engineer and fireman, and they were made to open, so that the engineer could look back, see his train, and receive signals relative to its management from the conductor and brakemen; that by reason of the windows' being boarded up, it became necessary for appellee, in order to receive the signals given, to turn from his seat toward the center of the cab, thereby bringing his face in proximity to the water-gauge and valve thereon; that the water-gauge was partly composed of glass, in the form of a tube twelve inches long; that there were valves and cocks in the cab which appellant had negligently suffered to be and remain out of repair, and they were leaking and making a noise, rendering it difficult for appellee to hear; that said water-gauge was liable to explode at any time and to injure appellee, of which appellant had knowledge and appellee none. It is also averred that appellee was in the line of promotion in said service, and that he was induced to take out and operate said engine by appellant's roundhouse foreman, who had charge of and full power in its behalf over its engineers at the Cincinnati terminus, and to whose orders he was bound to conform; that said foreman assured him that the engine was perfectly safe for use, and threatened to discharge him if he did not take the same out; that while operating said engine, and in endeavoring to get signals from the brakeman for the placing of the engine in such position that the locomotive and tank might be uncoupled, said water-gauge exploded, the steam and broken glass striking appellee in the face, destroying one eye, damaging the other, and inflicting additional injury; "that said injuries were caused by defendant's negligence as herein set forth and alleged."

It is the unquestioned duty of the master to use reasonable care in furnishing safe tools and appliances for the

Cleveland, etc., R. Co. v. Patterson—37 Ind. App. 617.

servant's use. This duty is shown by the allegations 1. of the pleading in question to have been disregarded by appellant. No suggestion is made to the effect that the engine was in a reasonably safe and fit condition for use, but, in support of the assignment based 2. upon the overruling of the demurrer, it is argued that the negligent boarding up of the windows was not the proximate cause of the injury, but that said proximate cause was the bursting of the water-gauge, not averred to have been caused by appellant's negligence.

It is averred that appellant did not exercise reasonable care in furnishing a safe engine, and because of its negligence in that behalf its employe was injured. A number of particulars are specified in regard to which the defects are explicitly pointed out, one of which was the liability of the water-gauge to explode and injure appellee, of which fact he is averred to have been ignorant and appellant to have had knowledge. The general denial, put in issue, among other things, whether the engine was defective as averred, and whether such defects caused the injury complained of, and each issue was one of fact. *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308. The averment that the injury was caused by the defective tool is sufficient, it not being overcome by specific facts exhibited. If it were true, as assumed, that no charge of negligence with 3. regard to the water-gauge is made, it would by no means follow that appellant would be relieved from liability. If its conduct in furnishing an engine which was defective, as alleged, caused appellee to be in a place of danger, thereby leading to his injury, such negligence is a proximate cause thereof, and the fact that other causes contributed thereto affords no defense. *Cincinnati, etc., R. Co.* v. *Worthington* (1903), 30 Ind. App. 663, 96 Am. St. 355; *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261; *Board, etc.,* v. *Mutchler* (1894), 137 Ind. 141.

It is averred at length that, had the windows of the cab

been in condition to use, appellee would, in the work he was doing when injured, have been taken away from the danger, while because of their defective condition he was compelled to occupy a portion of the cab whereby he was exposed thereto, and his injury thereby caused. The demurrer admits these allegations to be true, and there was therefore no error in overruling it. *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787.

In support of the ground stated for a new trial, that the evidence is insufficient to sustain the verdict, it is argued that whether appellee would, had the windows been in proper condition, have been turned away from the point of danger at the instant of the explosion, is purely conjectural. This contention may readily be granted, but there was evidence from which the jury might find, as the general verdict does, that he was in the place of danger, while receiving signals and obtaining information relative to the movement of the engine, and that his presence there was caused by the cab windows' being boarded up. Conjectures as to what he might have been doing in contingencies which did not exist do not affect the finding of fact as to what he was doing and the conditions leading to the action taken. There was evidence tending to sustain appellee's theory relative to the cause of the injury complained of. Appellant requested a number of instructions embodying its theory upon this subject. They were not given, and, in view of what has been said, will not be adverted to.

It may be that the fireman was charged with the duty of receiving signals and communicating them to his engineer, as asserted, but such duty can not be regarded as exclusive. The obligation which rests upon the engineer in the performance of his responsible task calls for constant vigilance upon his part, and we decline to hold that keeping a vigilant outlook was not within the line of his duty.

Cleveland, etc., R. Co. *v.* Patterson—37 Ind. App. 617.

A considerable number of cases, in which questions of proximate cause have been considered, are cited in appellant's brief. The facts considered in them differ 6. from those presented in this case. Whether an injury is caused by the acts of omissions of the defendant, which are attacked as negligent, is primarily a question of fact to be determined by sensible men, in the light of circumstances and conditions existing. *Chicago, etc., R. Co.* v. *Martin, supra; Southern R. Co.* v. *Webb,* (1902), 116 Ga. 152, 42 S. E. 395, 59 L. R. A. 109; *Great Northern R. Co.* v. *Bruyere* (1902), 114 Fed. 540, 51 C. C. A. 574; *Patten* v. *Chicago, etc., R. Co.* (1873), 32 Wis. 524, 535; *Landgraf* v. *Kuh* (1901), 188 Ill. 484, 501, 59 N. E. 501; *Felton* v. *Harbeson* (1900), 104 Fed. 737, 44 C. C. A. 188; *Chicago, etc., R. Co.* v. *Price* (1899), 97 Fed. 423, 38 C. C. A. 239.

In *New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414, and *McGahan* v. *Indianapolis Nat. Gas Co.* (1895). 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199, 7. verdicts were set aside upon the ground of a responsible intervening agent, but the court, notwithstanding the evident care with which the opinions were prepared, overlooked the fact that, where the intervening agency is one whose intervention might reasonably have been forseen by the wrongdoer, it does not operate to relieve him from liability. *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583, 590, 6 L. R. A. 193; *City of Crawfordsville* v. *Smith* (1881), 79 Ind. 308, 41 Am. Rep. 612; *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230; *Binford* v. *Johnston* (1882), 82 Ind. 426, 42 Am. Rep. 508; *Cincinnati, etc., R. Co.* v. *Eaton* (1884), 94 Ind. 474, 479, 48 Am. Rep. 179; *Alexander* v. *Town of New Castle* (1888), 115 Ind. 51; *Clore* v. *McIntire* (1889), 120 Ind. 262, 265; *Milwaukee, etc., R. Co.* v. *Kellogg* (1876), 94 U. S. 469, 24 L. Ed. 256;

*Mahogany* v. *Ward* (1889), 16 R. I. 479, 17 Atl. 860, 27 Am. St. 753; *Southern R. Co.* v. *Webb, supra;* 1 Thompson, Negligence (2d ed.), §54.

8. The general verdict carries a finding that the negligence complained of was the proximate cause of the injury suffered, and there is no good reason for setting it aside.

The doctrine that the servant who remains in employment after knowledge of the danger thereby assumes the risk depends upon an implied contract deduced 9. from such facts. *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319. Where there is an expressed contract there can be no implied one. *Long* v. *Straus* (1886), 107 Ind. 94, 99, 57 Am. Rep. 87; 15 Am. and Eng. Ency. Law (2d ed.), 1078. The appellee 10. testified: That on February 3, 1902, he was in the employ of the appellant, as an extra engineer, taking regular engineers' places when they were absent; that he was subject to call in case there was a vacancy; that he was working in Wood street yards; that for some four or five months prior he had been running extra switch-engines at said Wood street and Mill creek yards, Cincinnati, Ohio; that on said day he was ordered by appellant's superintendent to report to the Riverside roundhouse for through freight service; that in obedience to said order he reported to James Keegan, the foreman at the Riverside roundhouse; that about 3:30 o'clock he was called by direction of said foreman for an "extra west;" that in obedience to said call he went to the roundhouse and saw that he was marked for engine No. 723 west, to leave at 4 o'clock; that he then went out to said engine, and walked around her, and met the foreman, Keegan, and said: "Mr. Keegan, I don't want to run that engine the way she is; she is boarded up, and I can't see the right of way." And Keegan said: "That engine is all right; we don't want to have any bulling out of you around here; we want you to get out of here; this

engine is all right and safe for service." To which remark the appellee replied: "If I get on this engine, you will be responsible for anything that happens along the road." And Keegan replied: "We are responsible for all things; that engine is O. K.; you get on her and go.  *  *  *  You get on her and go, or you will never run any more engines for this company." Appellee then took charge of said engine. The witness Charles Sands testified that there was some kind of an argument: "Nick [the appellee] did not want to go out on the engine the condition she was in, and Mr. Keegan told him to go on, and go out on it, or he would not make any more trips on any other engine on that road, and Nick said he didn't like to take the engine out in that kind of shape, and Mr. Keegan told him to take the engine and go out; that she was all right to go out; that she was all right to go, and if he did not take that engine or locomotive out that he would not take any other out for the company, and that it was all right and ready to go."

There is no reason why the master may not contract to assume all risk arising from defective appliances furnished by him. "It may be collected from the

11. almost unanimous current of judicial authority that, if the servant complains of or directs attention to a defect or danger in the place where he is required to work, or in the tools, machinery, or appliances with which he is required to work, and thereupon the master, or his representative, assures him that he can proceed without danger, and requests or commands him to continue his work—the servant will not, as a matter of law, be put in the position of having accepted the risk, or of having been guilty of contributory negligence, because of relying upon the presumedly superior knowledge of his master or of his master's representative, and continuing the work. The servant will not be imputable with wrong for thus acting upon the advice or assurance of the master or his vice-principal, nor will it lie in the mouth of the master to impute blame to

the servant for so doing." 4 Thompson, Negligence (2d ed.), §4664. The conclusion stated accords with our own cases. *Phillips* v. *Michaels* (1895), 11 Ind. App. 672; *Bradbury* v. *Goodwin* (1886), 108 Ind. 286.

It does not follow that one who works with a defective appliance or machine is necessarily guilty of contributory negligence because of so doing. *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644.

Appellee does not appear to have been, at the time of his injury, doing anything unusual or unnecessary to the operation of the engine in its then condition.

Judgment affirmed.